COLUMBIANA.<br>August, 1819.<br><br>Cutler<br><i>v.</i><br>Brinker.

---

## CUTLER vs. BRINKER.

An alias Fi. Fa. cannot lawfully issue where property enough has been taken on the first Fi. Fa. A venditioni exponas is the proper writ in such case.
An equitable interest in land, cannot be seized and sold on execution.

MOTION FOR JUDGMENT ON AN AWARD.

This was an action of trespass, for taking and carrying away some salt kettles, &c. from the plaintiff's salt works, which was referred by agreement of the parties; and at this time the following award was returned, viz.

" The subscribers, being authorized and appointed by the agreement of counsel hereto prefixed, to arbitrate and determine certain matters in difference between Abraham Cutler and Andrew Brinker, for which an action of trespass has been brought and is now pending in said court, met, by agreement of parties, the 2d day of September, 1818, at the office of J. M. G. in Steubenville, heard the evidence of both parties, and adjourned the case for consideration. November 11th, 1818, met at Cadiz, Harrison county, and after considering the case, find the following facts proved, to wit—that Thomas Gillingham, on

COLUMBIANA.
August, 1819.

Cutler
*v.*
Brinker.

the 1st of August, 1814, entered, in the Steubenville land office, the N. W. quarter of Section 25, Township 9, Range 2, paid one fourth of the purchase money and received a certificate from the Register of said office—that on the 30th of May, 1817, Gillingham duly assigned the said certificate and all his interest in said quarter to James Hair—that on the 9th of October, 1817, Hair assigned the said certificate and his interest in said quarter section, to the plaintiff—that on the 5th of December 1815, Rogers sold to Hair one acre of land, adjoining the said quarter section, of which acre Hair was in possession, and on which the furnace for boiling salt, hereafter mentioned, was erected by Hair; no deed was executed by Rogers to Hair—that on the 9th of October 1817, Hair assigned the contract with Rogers for the said acre of land to Cutler—that on the 12th July 1818, Cutler took possession of the said quarter section and acre and furnace, under his said purchase from Hair—Hair not being present, but the tenant of Hair then in possession assenting and peaceably giving up the possession—that Cutler, soon after he took possession, took out the salt kettles belonging to the furnace that had been erected by Hair on the acre bought of Rogers, and commenced building a new furnace—that on the 1st of April 1817, judgment was entered in the Common Pleas of Columbiana County, against Hair, at the suit of Wm. Fogle, for $227 27, on which judgment executions were issued as follows—1st, a *fi. fa. et lev. fa.* of July 14th 1817, returned " served July 29th 1817, on a salt well and furnace, together with N. W. Qr. of Sec. 25, T. 5, R. 2—money made by rect. of pltiff's. att'y. $90 72 "—2d, an *alias fi. fa. et lev. fa.* of Nov. 19th 1817, returned "levied Nov. 20 1817, on 34 salt kettles of Hair, with all the land thereto belonging, and furnace and salt well; land not sold for want of bidders." 3d, *a pluries fi. fa. et lev. fa.* of January 2d, 1818, returned " no goods ; levied 28 February 1818, on N. W. Qr. Sec. 25, T. 9, R. 2, together with a salt well, furnace, and 34 kettles—not sold for want of buyers." 4th, an *alias pluries fi. fa. et lev. fa.* of June 23d, 1818. Under this execution, the sheriff of Columbiana county sold the said quarter section and acre of land to the defendant on the 27th of July 1818, (Cutler being then in possession) and has made to the defendant all the title he could legally make under that execution. After the said sale by the sheriff (the kettles not being reset) the defendant took away 24 of the kettles and some boards which were on the shed over the furnace, with force and arms ; the kettles and boards were worth $422 60. We are, therefore, of

opinion, that the plaintiff is entitled to recover, and we <span style="float:right">COLUMBIANA.</span> do award of and concerning the premises, that the said <span style="float:right">August, 1819.</span> Cutler recover of the said Brinker, the sum of four hundred and twenty-two dollars and sixty cents, the value of <span style="float:right">Cutler<br>v.<br>Brinker.</span> the said kettles and boards; and that the said Brinker pay the said Cutler the same. In witness," &c.

· GOODENOW and WRIGHT, for the plaintiff for judgment on the award.

POTTER for the defendant, insisted that the plaintiff ought not to have judgment: " 1st. Because, by the finding of the arbitrators, the judgment under which this property was sold, was rendered prior to the transfer of Hair (against whom the judgment was rendered) of his interest in this property to Cutler. Our act of assembly declares that all lands, tenements and hereditaments, shall be bound by judgment from the first day of the term, &c. 2d. That the sale to Cutler is a fraudulent sale, so far as it respects creditors. From the finding of the arbitrator, it appears that on the first of April, 1817, the judgment under which this property was sold, was rendered—on the 9th of October, 1817, Hair assigned all his interest in this property to Cutler, and on the 12th July, 1818, Cutler takes possession: in the mean time the works are occupied either by Hair or his tenant; and on the 23d June, 1818, a *pluries fi. fa.* under which this property was sold to the defendant, was issued. The supposed trespass complained of, was committed by the defendant the 27th July, 1818. 3d. That the salt kettles and boards taken by defendant, are personal property, and liable to be seized upon and sold under the execution issued."

PRESIDENT.—This is an action of trespass, for taking and carrying away the personal goods of the plaintiff. To maintain the action, it is sufficient for him to prove that he had possession of the property; on shewing this, he entitles himself to judgment, unless the defendant shews a better right. First, then, as to the plaintiff's possession of the kettles. They were in a furnace, and used for boiling salt by Hair, and by him were sold and delivered to Cutler: whether they were sold with Hair's interest in the land on which the furnace was erected as fixtures, or separately as personal property, does not appear; but it appears that Cutler had possession of them, and exercised acts of ownership over them. If it was material, in this case, to decide the question, I should not hesitate to say that kettles placed in a furnace for making salt in the usual manner, are not fixtures, but may be seized and sold in execution as personal property. As to the boards,

COLUMBIANA.
August, 1819.

Cutler
v.
Brinker.

they appear to have been in the plaintiff's possession also. But the defendant claims to be the owner of this property as a purchaser thereof at the Sheriff's sale: and he claims that it was sold to him, 1st as real estate, and 2d as personal property. By our statute law, the execution against property is made to combine the *fieri* and *levari facias* in one writ. Four executions have been issued and levied upon the land and furnace; and on the last one. the land has been sold to the defendant. If a party having judgment, has either not seized and taken or levied upon any property, or has seized and taken or. levied upon insufficient property, to make the money out of, he may have an alias execution and make an original or further seizure or levy as the case may require; in no other cases can an alias execution lawfully issue; if, for want of time or for want of bidders, the property remains unsold at the time when, by law, the officer is bound to return his writ, he should return such fact, that the party may sue out a *venditioni exponas*. The method pursued here, of sueing out an alias, a pluries, and an alias pluries execution, where no more property was wanted, is altogether improper, unnecessary and harrassing to the debtor. The land, the furnace and the kettles, were levied upon by the Sheriff, as though they were the real estate of Hair. The land was sold to the defendant. This sale was void, for it appears that the land did not belong to Hair, but to the United States and Mr. Rogeis. Hair had a certificate from the first, that one-fourth of the purchase money was paid, and that, on payment being made of the other three-fourths, a patent would be granted—and a contract from the second; but what were the stipulations of it, is a mattter not disclosed. Neither the certificate or contract, vested the fee of the land in Hair; he had but an equitable interest; such equitable interest might pass to the assignee of the certificate and contract—but it was not land which could be levied upon, or goods and chattels which might be seized and taken possession of by the Sheriff. The kettles could not, therefore, have been sold as fixtures to the real estate of Hair; so of the boards. But the kettles and the boards in question, have not been sold on execution. The quarter section, the acre of land, and the kettles, were distinct and several kinds or parcels of property, upon which the executions were levied: the two first were sold to the defendant, but no sale has as yet been made of the kettles. If, then, the proceedings had been correct, and the writ under which the sale was made a legal one, still there has been no sale of this prop-

erty to the defendant; he does not appear to have any

right: consequently the plaintiff's possession, as against him, must prevail. It has not been stated, that the plaintiff held possession of these kettles as bailee of the Sheriff, as he must have held them had they been rightfully taken on execution as the personal goods of Hair, nor that the defendant took possession of them for the officer: claiming to hold them as a purchaser at a sale, he fails entirely in making out his title— the award, therefore, must have been for the plaintiff, and there is nothing appears to induce a suspicion that the damages have been estimated too high. The plaintiff must, therefore, have judgment on the award.